Candace Thomas v. Albany Area Primary Healthcare Mr. Nelson is here for the appellants Ms. Karis Bang is here for the government Mr. Walker is here for Thomas Mr. Nelson, are you ready to proceed? I am, your honor. You may begin. May it please the court, I am David Nelson and I represent the appellants and defendants below Albany Area Primary Healthcare and Dr. Cheryl Tolliver. Dr. Tolliver is a hospitalist who is employed by Albany Area Primary Healthcare and she is a federally supported person and listed in the grant application specifically by name as someone who is a federally supported personnel. All of the personnel funding for Albany Area Primary Healthcare is provided by the federal government. Dr. Tolliver was sued in state court, raised the potential defense of the Federal Court Claims Act and after the case had been pending for some period of time, the government removed the case pursuant to Section 233 of Title 42. In section and chapter, I think it is 89 of Title 28 which includes the Westfall Act which is 292679 and specifically would include 2679B2. On removal, the government filed a notice of substitution claiming to represent both itself and Dr. Tolliver and Albany Area Primary Healthcare. It filed a certification and certified that Dr. Tolliver was in the course and scope of her employment and was entitled to federal tort claim immunity as a public health service agency employee. Counsel, may I ask you a question? This is Judge Lagoa. Under the certification that the government filed, that certification was filed pursuant to 42 U.S.C. 233A, correct? The certification references Section 233, but in Alexander v. Mount Sinai Hospital, a similar certification was filed and the 7th Circuit held that if the government invokes 2679B2, that that certification is binding as to the issue of subject matter jurisdiction on removal. And so, the fact that the government merely references Section 233 in its certification is of no import. But the notice of removal itself also only notices the removal. Please take notice that pursuant to 422 U.S.C. 233A and 233C, that the removal is based on that. No, the removal actually says that it includes 2671 at sequitur at paragraph 5. I'm looking at the initial first page of the notice of removal, which is, please take notice that pursuant to 42 U.S.C. Sections 233A and 233C, and I'll be happy to have the defendants named above in the United States. That is correct. Notice of removal. That is correct. That is how the introductory language of the notice of removal reads. And the wherefore also says, wherefore defendants give notice that the above caption pending in state court is removed to the United States to the Middle District of Georgia under and pursuant to 42 U.S.C. 233C. The wherefore and the introductory language do say that, but Your Honor, it does state specifically that one of the bases is also 2671 at sequitur, which can only mean 2679, the Westfall Act, because that's the controlling statute in these cases. And it has to be D2 because that's the basis for removal under those. And the district court correctly concluded that the government had, in fact, in both the Westfall Act and that 2679, which would be 2679D2. Where this case becomes, I guess, unusual or interesting is that the government, after filing the certification and after filing multiple amendments over a course of a month representing that Dr. Toliver was, in fact, a public health service employee. So there was a thick of filing. First they filed the certification late, and then they filed yet another document that when they received a brief from the plaintiffs, they abandoned their argument even though it was the plaintiff's burden to prove whether or not the government certification was correct. And so this case does fall within those cases, Osborne v. Haley, and the weight of the circuit authority, including the Alexander v. Mount Sinai decision, which stands for the proposition that once the government has removed the case and certified employment and referenced 2679, the Westfall Act, subject matter jurisdiction is conclusively established even if the employee defendant is later found not to be covered by the Federal Court Claims Act. And so what we're asking the court to do is... But five other places it says section 2233C, and even paragraph 5 says 2671 et sec. I don't see any reference anywhere here to 2679. Well, 2671 et sec. is Chapter 89, Your Honor, but the only code section that would be applicable that would permit removal would be 2679d2. I understand that, but it doesn't say 2679. It says 2671 et sec., and everywhere else it's 233a. And let's assume you didn't have that 2671 et sec. in there. You would concede then it's pursuant to 233a, right? I don't know the answer to that, Your Honor. I'm not sure I'm prepared to make that concession. Or I'm not prepared to make that concession because that's... I'll say the 2671 et sec. is not in the removal thing at all. You're not prepared to say if it was 233a that therefore it's correct. I'm not prepared. I just haven't addressed that. I understand that. I'm just not sure 271 et sec. gets you anything. Well, and thank you, Your Honor. We believe that the district court again was correct in concluding that the Westfall Act had been invoked, and that is 2679, and that there had been a certification. And the issue in this case is that the government essentially filed a certification after they had a year, and then to evaluate the record, and then when the police filed a motion to dismiss, they did not challenge that. And in fact, the record reflects that Dr. Tolliver is in fact covered under the Federal Tort Claims Act. So the record reflects that she is specifically listed as a physician under the federally supported personnel justification table, which is page 63 of 193 of document 12-1. Counsel, may I ask you a question before your time runs out? Yes. How do we deal with, let's assume that your argument is correct about the Westfall Act applying. How do we deal with the fact that the remand has already occurred? Well, it hasn't. We have, I mean, the district court erred in attempting to file the motion to remand. And we have challenged that at that basis. I think that was in complete error, and this court should hold that the order is reversed, and find that subject matter jurisdiction exists, and allow, if necessary, the district court to develop the record as would ordinarily have occurred under this set of circumstances, and hold a hearing, which it did not do. And I'll reserve the remainder of my time. Well, we're going to give you a little bit more time here. This is a pretty complicated case now. And so the district court accepted the government's decertification. Was there discretion on the part of the district court to accept it or reject it in the district court bound by the government's decertification or certification? Where's the discretion on the part of the district court with regard to the certification or decertification by the government? So, I think the district court may be bound by the decertification of Dr. Tolliver. But that doesn't, the first issue is the issue of subject matter jurisdiction, because if the court decides to accept the decertification, what happens is that it would be remanded to state court. More evidence could be developed to support the Federal Tort Claims Act applying. And then the case simply comes back to the district court, which is exactly the thing that all of the circuits that have addressed this issue caution against as the basis for when the government removes the case and certifies the physician as an employee under the public health service that there's essentially an anti-shuttling provision that prevents it from bouncing back and forth because it's not this positive. I'm a little confused now. Isn't there already a determination that the hospital and the doctor's activity was not related to grant-supported activity? Based on the limited record, that's what the district court found, but I don't think that is either binding on the state court or precludes the development of additional evidence. And we have raised in our brief as well that the district court erred in finding the first instance because we did file a motion. The statute does not really provide an avenue for Dr. Tolliver to challenge the government, but remember at the time that all of this was occurring, the government was representing both Dr. Tolliver, Albany Area Health Care, and the government, and it basically capitulated for Dr. Tolliver and Albany Area Health Care, and in fact is now arguing on behalf of the plaintiffs, which is sort of at odds with the adversarial process. So we had to file to some vehicle to raise this issue, which we did. I'm not sure that was correct under D3 in hindsight, but I don't think on remand it prevents it from coming back to the court. Was Phoebe Putney one of the locations listed in the grant application? Phoebe Putney was not specifically listed, but what was listed was that Albany Area Health Care would provide hospitalist coverage and after hours coverage for its patients, and Dr. Tolliver is specifically listed as a federally supported personnel. And so I think the government has conceded, I think the plaintiff has conceded, and I think the district court acknowledged that if this patient had been a patient of Albany Area Primary Health Care, there would be no dispute that she would be covered by the Federal Tort Claims Act. Even though Dr. Tolliver treated the areas pursuant to an agreement with Phoebe Putney and was covered under private malpractice insurance, a private malpractice insurance policy? We disagree with the reading of that agreement, Your Honor. The agreement says that they're covered if a community health care provider requests coverage of a hospitalist. This was not an admission that was a request from a private health care provider. This was an admission through an emergency room, after hours, with Dr. Tolliver being the on-call physician for patients. So this is a very different situation from the... She's 100% at that hospital. She doesn't ever go to those other clinics. She's 100% at the hospital, right? She doesn't provide services only for Albany Health patients. She provides services for anybody who walks in the door at that hospital, correct, if they're pediatric. She does. There's three classes of patients she provides care for. Albany Area Primary Health Care patients, patients where a community health care provider admits a patient to the hospital and asks for her to provide hospitalist coverage. The third category would be sort of incidental to her work with Albany Area Primary Health Care, which is patients who are admitted on an emergent basis who do not have, at the hospital at that very moment, either the community pediatrician to be able to come in and see. And that's the case here because the record is that Dr. Tolliver was providing services after hours. This was a 4.30 in the morning, 5.30 in the morning transfer on a Sunday morning to Monday morning, I believe, time frame. And so we would contend that that is incidental to her clearly defined employment with Albany Area Primary Health Care. We would contend she cannot be a non-public health service employee in this situation when her salary is paid for entirely by the government. And that's what the record reflects. Dr. Wilson, I agree this is complicated. I have a threshold question that I'm really concerned about, and that is whether Dr. Tolliver and the health care were entitled to invoke 26M9D3 of the Westfall Act. I agree you can say maybe this is under the Westfall Act, but the government is the one that deals with the scope of employment certification. And the Westfall Act applies to federal employees, but she, recipients of a federal grant funding are not federal employees. They are deemed employees of the public health service under 233 for purposes of that section. But they're not federal employees, and I'm not so sure after the government decertified, they were entitled to invoke 26M9D3. Can you tell me why they were even entitled to invoke that? Why he was entitled to, Dr. Tolliver? Tolliver and the health care. To seek the scope of employment certification. The government decertified, right? Well, the government... And then they sought to invoke it. Right. Under what ability or what jurisdiction or under what rule or statute did you have the ability to do that? I agree. He cited 26M9D3, but I just don't know that that gives him authority to do that. Well, that is the issue that has – this is the conundrum that has been created by the government's certification, decertification, and this is exactly the issue. And your honor raises a good point. I'm not sure that D3 was ever properly invoked by my client, but that doesn't change the outcome of the case. The question I have is in Westfall because the statute itself doesn't really address what happened here, which is here the government certifies, okay? And then it decides I'm going to take back the certification because I was incorrect. We erred in our factual analysis. But you invoke 3, but the attorney general had not refused to certify. They had certified, and then they withdrew and rescinded the certification. Right, and I think that gets back to I believe that the D3 invocation by my clients may have been an error because really it should have – what we should have said and invoked is D2 and simply said that as a matter of subject matter jurisdiction, the government has certified Dr. Tolliver as an employee. They're entitled to withdraw the certification, but this court retains subject matter jurisdiction. Well, shouldn't you have also responded to the motion to remand by the plaintiff? No, because at that time the government was representing Dr. Tolliver, and they had filed an entry of appearance on behalf of Dr. Tolliver and Albany Area Primary Health. No, I understand that, but when the government said that they were going to decertify, at that point shouldn't your client then have also filed a response to the motion to remand saying this is why you should not remand? Perhaps. I think the timeframe for a response had expired at that point if I recall the record correctly. And so I would ask – I think the D3 motion was in effect a response in some ways to that, to the motion for remand, perhaps not articulated as clearly in hindsight in this complex issue as we would have liked. But again, this is an unusual case in which really the government takes one position after having the record in front of it for essentially a year, and then continues to maintain it for a month in the court, and then withdraws it suddenly after taking all of these steps. And I think that goes back to the 2679 D2 issue, that this should have remained in the district court for further development of the record if necessary, or your honors should conclude that in fact Dr. Tolliver is covered under the Federal Court of Claims Act. Well, why don't we hear from the government next then? Thank you. Ms. Kirschbein, you filed an amicus brief that we've considered. Would you like to proceed with your argument? Yes, I would. Thank you, Your Honor. I'm Dana Kirschbein for the United States. Before I go on, can everybody hear me? Yes, we can. This court lacks appellate jurisdiction because there's simply no review of this remand order under 28 U.S.C. 1447 D. That statute provides that an order remanding a case to state court is not reviewable on appeal or otherwise. This was a remand for lack of jurisdiction, which this court has held in Alvarez and other cases, is within the scope of that bar in 1447 D, and that ends this case. Now, this discussion of the Westfall Act, the Westfall Act is an entirely different scheme that Congress set up for federal employees, not for grant recipients. Let me ask you a question. Does it matter that the notice of removal that the government filed and the certification, particularly notice of removal, only is done pursuant to 233 A and C? Let me rephrase the question. Normally, if you wanted to invoke the Westfall Act as the government and you're doing a notice of removal, would you then in the introduction section to your notice of removal include that particular provision? Of course, but we couldn't invoke the Westfall Act here because this is a statute about, this is a grant recipient, not a federal employee. The discussion in the notice of removal of 2671 at seek, that's the FGCA. If you're looking at the notice of removal, you see it says under 1346 B and 2671 at seek, the Federal Tort Claims Act. Under 233, what that paragraph in the notice of removal is saying, and what 233 in the Public Health Services Act, which controls here, says is that once the United States is substituted, this becomes an FGCA case against the United States. Now, the Westfall Act, 2679, was enacted in a separate statute, and it governs suits against federal employees, and it creates some special protection for federal employees in 2670-92, the provision they're invoking, which of course is not cited in the notice of removal. That provision of the Westfall Act says, as the Supreme Court has told us in Osborne, that it's clear that once certification is made, a federal employee gets the benefit of staying in federal court, even if the court ultimately concludes that the employee isn't within scope. Osborne concluded that that more specific provision displaces 1447D, and it reiterated that again in PowerX, it's only because of that very specific language, which doesn't apply, of course, to every case under the Westfall, only the ones certified under the provision D-2, that that clear statutory command would override 1447, the bar on review of remand orders. There is nothing like that in the Public Health Services Act, and if you go to the certification, we don't have a certification under the Westfall Act. We have a certification, you see at docket number 1-2, that is a certification under 42 U.S.C. 233, under the Public Health Services Act. Now, a lot has been made of the government's cite to the Westfall Act in that motion to substitute, but the key is the certification. The language that the Supreme Court relied on in Osborne was about certifications under 2670-92. The statute said, this certification of the Attorney General shall conclusively establish. Where we cited Westfall, maybe we shouldn't have done this, but it was in a string cite in the notice of substitution that said that the United States is a proper defendant and substitution occurs by operation of law. That has certainly introduced some confusion. Somebody probably thought it would be helpful because that part of the Westfall Act works the same way, but it doesn't change this case. This isn't a Westfall case. It doesn't involve a federal employee. What we have here is a certification under the Public Health Services Act, and as the Supreme Court, in its own words, has relentlessly repeated, any remand order on the grounds specified in 1447-C is immunized from all forms of appellate review, whether or not that order might be deemed erroneous, which, of course, it wasn't here. There's no reason for this court to reach the merits. This really needs to be dismissed for lack of appellate jurisdiction, but because of the discussion about the merits, before, I'll just say a few things about it. This is a statute that limits coverage. Doctors are covered when they're treating health center patients, but, of course, for nonpatients, they're only covered if the secretary determines that certain conditions are met. These are grants that cover certain activities in certain locations, and you only have FCCA coverage for those activities. The goal here is to support the grant-supported activity. We don't want these entities spending all their money on insurance premiums, but this is an unusual statute that puts the taxpayers on the hook for the negligence of a private party, and it's very expensive, and Congress wisely limited it, so it doesn't follow the doctor wherever the doctor happens to go and put the taxpayer on the hook for everything the doctor does. It covers doctors when they treat health center patients. If they go someplace else, they're treating other people, then it's only under certain circumstances. This isn't within the regulation. The circumstance is there. They could have requested a particularized determination if they thought that this should have been covered. They could have asked HHS. They didn't do that. What they did instead was contract with the hospital, and the contract with the hospital is very clear. The hospital will provide malpractice coverage for treatment of patients who are not patients of the health center independent of the services rendered under this agreement, so independent of the emergency room services. Dr. Tulliver's employment contract likewise specified that she would be provided additional malpractice coverage beyond FCCA coverage for patients whose primary care physician is not also directly employed by the health center. This is not within the scope of what Congress provided, and the health center, I think it's telling. They recognize that in these contracts and provided other agents. Two minutes remaining. Unless there are questions, that's really all I have to say. I will ask the court to dismiss for lack of jurisdiction. Thank you, Ms. Kehrsvein. Now we'll hear from Mr. Walker on behalf of the athletes. Good morning, Your Honor. May it please the court. This is Caleb Walker in Macon, Georgia, representing Candace Thomas and Dudley Thomas, who were the plaintiffs in the trial court and are the appellees in this appeal. We agree with the government that this case should be decided on the jurisdictional issue. I won't go into detail on that unless the court would like me to address it now. We agree that the government's position, as explained today, should be decisive of this case. But I would like to cover some of the facts in the case that show that the district court correctly decided that Dr. Toliver should not be afforded Federal Tort Claims Act immunity for the claims related to the death of Darius Thomas. Firstly, it's important that Darius Thomas was not, other than this hospitalist treatment, he was not a prior patient of Albany Area Healthcare. In fact, he had an established relationship with another pediatrician, Tanya Smith, who's not an employee of Albany Area Healthcare. He had seen Dr. Smith for 26 visits during his 20 months since birth at the time of this occurrence. And so it's pretty clear that he was an established patient of a pediatrician who was totally unrelated to this Albany Area Healthcare. He was not a prior patient of the hospital's staff positions? Well, the defense have introduced a bill that appears to indicate that his circumcision upon his birth was performed by a hospitalist of Albany Area Healthcare. But just practically speaking, he was delivered at Phoebe Putney, and so his circumcision was going to be performed by one of the pediatric hospitalists there. And pursuant to the contract between Phoebe Putney and Albany Area Healthcare, Albany Area Healthcare provides 24-7 pediatric hospitalist coverage. So really, there was not another option other than that one of the Albany Area Healthcare hospitalists was going to perform that circumcision, just because of the fact that that's the location he was delivered. But other than that circumcision... So the hospital had previously billed for care provided to Darius Thomas, hadn't it? I believe it was only with regard to the circumcision. As I stated, he was delivered at Phoebe Putney, so he was billed by Phoebe Putney. But the only indication of any relationship with Albany Area Healthcare was a bill for performing his circumcision. The circumcision happens right after the birth? Correct, Your Honor. It's not like they brought him back for the circumcision? Correct, Your Honor. It was during the hospitalization for his delivery. Two minutes remaining. So he was not a patient of Albany Area Healthcare. And so under the statute and the regulations that have been promulgated to interpret the statute, non-patients of the provider are only covered in very limited circumstances. And this case does not fit any of those limited circumstances. And that's important because the standard that's been published by the Department of Health and Human Services is that if it doesn't fit squarely within the promulgated exceptions, the provider should apply to the secretary for a determination that this certain activity with regard to non-patients should be covered by the immunity of the Federal Tort Claims Act. And that never occurred in this case. Albany Area Primary Healthcare did not apply for a determination that its 24-7 staffing at Phoebe Putney Hospital should be considered related to its grant activity and should include treatment to non-patients. So the only other situations under which non-patients are considered to be covered as grant-related activity are set out in 42 CFR Section 6.6E. And the two subsections of that regulation that apply, that could potentially apply but don't apply here, are number two, which is hospital-related activities, which covers periodic hospital call or hospital emergency room coverage when required by the hospital as a condition of obtaining hospital admitting privileges. And there must be documentation for the particular healthcare provider that the coverage is a condition of employment at the health center. And that's not the case here. There's no indication that Dr. Tolliver was doing periodic call or emergency room coverage because she was employed full-time at the hospital. So there was no periodic call. You can complete your argument. Thank you, Your Honor. There's no indication that she was doing periodic hospital call or emergency room coverage. And the other potential exception in Paragraph 3 likewise doesn't apply. That applies to periodic or occasional cross-coverage. Again, this was not periodic and it was not occasional. She was in the hospital the entirety of her employment. I have a quick record question. They just said, or maybe at least one of the lawyers, the first lawyer said that Albany Area Healthcare is 100% federally funded. Is that in the record? No, Your Honor. I would submit that Albany Area Healthcare has federal grant funding for its pediatric primary care that it delivers in the 15 grant-supported locations set out. But not 100% for everything it does? Yes, Your Honor. It's not 100% because the contract with Phoebe Putney to provide hospitalist coverage actually indicates that Phoebe Putney is paying Albany Area Healthcare for those services and in Albany Area Healthcare's grant application. They're paying Dr. Tolliver to be there. Excuse me, I didn't hear your question. The hospital is paying for her to be there. The hospital is paying Albany Area Healthcare for Dr. Tolliver to work at the hospital. Yes, Your Honor. Okay, so it's not 100%. Then the next thing is, you said some type of certification, if they wanted to apply for the determination that it's hospital-assigned employees should be considered part of the grant. What was that section or determination you were talking about? Yes, Your Honor. I believe it's under – well, we cited it in our brief at page 7. 42 CFR section 6.6 covers the application to the secretary for a determination unless one of the specific exceptions in that regulation apply and squarely apply the language that's been used by the Department of Health and Human Services and in some district court opinions referring to that. I realize they didn't make the application, but that is something they could do is what you're saying, if they had wanted her to be covered by the Federal Report Claims Act. Correct, Your Honor. If there's any question that these exceptions published in the federal regulations are not squarely applicable, which in this case they are not squarely applicable, the correct course of action to establish Federal Tort Claims Act immunity coverage would be to apply to the secretary for this determination, and that was not done. Okay, you've answered my question. Thank you. Thank you, Your Honor. We would just ask this court to dismiss the appeal for lack of jurisdiction or in the alternative to affirm the ruling of the district court. Thank you. All right, thank you, Mr. Walker. Mr. Nelson, you've reserved some time for a vote. Thank you. May it please the court again, let me first address Judge Hull's comment about the funding. So to be clear, at page 63 of 193 in document 12, it's a federally supported personnel justification table, and Dr. Coliver's name appears specifically on that. And then the total for that amount is $3,958,970. That's the amount for personnel costs. If you go to two pages before, page 61 of document 12, it lists under the budget, the federal portion for personnel charges is $3,958,970. And so it is our position that Dr. Coliver's salary is entirely funded, as is every physician's salary, is entirely funded by federal grant support. There may be other issues in terms of how much they pay for other locations, but the record is that at least if it's Dr. Coliver who's working at the hospital, she is being paid 100% of the time by a federal grant. Now, I want to go back to the issue of 2679, and I want to point out that while the government has essentially suggested that was just a string site, in their motion for substitution of the United States, which was filed on May 17th in document 5, in paragraph 3, they specifically invoke not 2671 at Sequitur, but 2679. And that can only mean D2, which gets back to the issue which is we've asked this court to conclude, which is that even if their certification is in error, the court should find that the district court has subject matter jurisdiction, and that's the Osborne v. Haley decision, Alexander v. Mount Sinai, and other circuit decisions which followed the Seventh Circuit decision, which all stand for the proposition which is when the government certifies a public health employee under Section 233, and they invoke 2679 in the process of removing and litigating the case, it remains in the district court even if the employee is determined not to be covered. And so we would ask the court to find that the district court erroneously concluded it lacked subject jurisdiction, that the government did in fact invoke 2679 D2, and we would also ask that the court, we believe the court should conclude that Dr. Toliver is in fact a covered employee under the Federal Tort Claims Act for the reasons we've set out in our brief in an argument by the record. But even if the court declines to reach that issue, we believe that this case should remain in federal court. Thank you. Thank you, Mr. Nelson. Thank you, counsel. Thank you, everyone.